UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEINING HU,<br><br>   Plaintiff,<br><br> v.<br><br>ELI BAKER, et al.,<br><br>   Defendants. | Case No. 4:23-cv-02077-KAW<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 79 |
| ERIC BOWERS, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>JASON KELLY, et al.,<br><br>   Defendants. | Case No. 4:23-cv-05396-KAW<br><br>Re: Dkt. No. 68 |

On November 3, 2025, Plaintiffs Weining Hu and Eric Bowers filed unopposed motions for final approval of class action settlement and for an award of attorneys' fees, litigation expenses and services awards.[1]

On December 18, 2025, the Court held a fairness hearing, and having carefully considered the briefs, argument of counsel, and all matters presented to the Court, hereby GRANTS Plaintiffs' motions as set forth below.

---

[1] Plaintiffs filed identical motions in both cases, so all references to docket entries in connection with this motion will be to the lower-numbered case, *Hu v. Baker,* 23-cv-2077-KAW. Other filed documents will be preceded by *Hu* or *Bowers*, respectively, and the docket number.

# I. BACKGROUND

## A. Factual Background

These cases are shareholder derivative actions related to *Bernstein v. Ginkgo Bioworks Holdings, Inc.,* No. 21-cv-08943-KAW ("Securities Action"). In the Derivative Actions, Plaintiffs asserted claims for violations of the Securities Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duty, the aiding and abetting thereof, and related stockholder causes of action under Delaware law against the Individual Defendants[2] – directors, officers, or controlling shareholders of Gingko and Soaring Eagle – in connection with, inter alia, the Individual Defendants' (i) alleged material misstatements and omissions about the Company's revenue and sources of revenue; and (ii) other alleged misconduct in connection with the Merger that formed Ginkgo. (*Hu* Compl., Dkt. No. 1 ¶¶ 47-99.)

The factual and procedural background is more fully described in the Court's prior order approving Plaintiffs' motion for preliminary approval of settlement. (Dkt. No. 77.) In sum, the crux of the dispute is whether the Individual Defendants — directors, officers, or controlling shareholders of Ginkgo and its predecessor, a special purpose acquisition corporation ("SPAC") named Soaring Eagle — breached their fiduciary duties to the shareholders and committed violations of law related to the Merger that formed Ginkgo.

## B. Relevant Procedural Background

In addition to the two federal derivative actions in this district, there is a consolidated derivative action in Delaware Chancery Court with plaintiffs Dylan Newman and Shlomo Moskowitz (*Moskowitz* Action). Ultimately, all three cases were resolved by the global settlement agreement in the Northern District cases. The material terms include that the Individual Defendants pay $4.125 million to Ginkgo, terminate certain contracts, and implement governance reforms and enhanced oversight. (Stipulation and Agreement of Settlement, "Stipulation," Dkt. No. 69-2 ¶¶ 2.2-2.5.) Additionally, subject to court approval, the Settling Parties negotiated the

---

[2] The Individual Defendants are Eli Baker, Arie Belldegrun, Marijn Dekkers, Scott M. Delman, Mark Dmytruk, Christian Henry, Jason Kelly, Reshma Kewalramani, Isaac Lee, Timothy Leiweke, Dennis A. Miller, Laurence E. Paul, Shyam Sankar, Reshma Shetty, Harry E. Sloan, and Joshua Kazam. (*Hu* Compl. ¶¶ 29-44; *Bowers* Compl. ¶¶ 24-32.)

1  payment of attorneys' fees and costs in the amount of $2,750,000 to be paid by Ginkgo.
2  (Stipulation ¶ 3.1.)  The $8,000 in service awards, or $2,000 each, which includes Mssrs. Newman
3  and Moskowitz in the Delaware Chancery Action, if approved, will be paid from Plaintiffs'
4  Counsel's attorneys' fees award. (Stipulation ¶ 3.3.)
5        On August 21, 2025, the Court granted preliminary approval of the settlement. (Dkt. No.
6  77.)  At this same time, and for settlement purposes only, the Court approved certification of a
7  provisional Settlement Class and the notice plan, appointed Dr. Hu and Mr. Bowers and Lead
8  Plaintiffs, and Bottini & Bottini, Inc. as Plaintiffs' Counsel. *Id.* at 16.
9        On November 3, 2025, Plaintiffs filed an unopposed motion for final approval of
10 settlement and for an award of attorneys' fees, litigation expenses and service awards. (Pls.' Mot.
11 for Final Approval, "Pls.' Mot.," Dkt. No. 79.)  On December 10, 2025, Plaintiffs filed a notice of
12 non-objection in support of the motion, which indicated that no objections to the settlement had
13 been filed or served even though institutional investors hold more than 60% of outstanding shares.
14 (Dkt. No. 82 at 1-2.)

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23.1, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). Rule 23, in turn, "governs a district court's analysis of the fairness of a settlement of a shareholder derivative action." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-cv-06003-CRB, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, No. 08-cv-4966 SC, 2011 WL 13156644, at *2 (N.D. Cal. Aug. 26, 2011) ("Within the Ninth Circuit, Rule 23's requirements for approval of class action settlements apply to proposed settlements of derivative actions." (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995))). Accordingly, "[c]ourts considering settlements of derivative actions have generally found '[c]ases involving dismissal or compromise under Rule 23(e) of nonderivative cases ... relevant by analogy." *Lloyd v. Gupta*, No. 15-cv-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (second and third alterations in original) (quoting 7C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1839 (3d ed. 2007)). The Ninth Circuit maintains a "strong

3

judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Rule 23 requires courts to follow a two-step process in evaluating a class action or derivative action settlement. First, the parties must show "that the court will likely be able to ... (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted).

Second, if the court preliminarily approves a derivative action settlement, notice "must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The court must then hold a hearing to make a final determination whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its

entirety." *Id.* (citation omitted).

## III. DISCUSSION

For the reasons set forth below, the Court will grant final approval of the settlement.

### A. Adequacy of the Notice and Administrator's Costs

Rule 23.1(c) requires that notice of the Settlement "must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). In determining the appropriate notice method, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders." *Bushansky v. Armacost*, No. 12-cv-01597-JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014).

The Court approved the parties' proposed notice plan when it granted preliminary approval, which required Ginkgo to (1) post the Long Form Notice on Ginkgo's Investor Relations webpage with the Stipulation of Settlement (and exhibits thereto) and maintain these documents until after the Final Approval Hearing, (2) publish via GlobeNewswire or similar wire service with a link to its Investor Relations webpage and the Stipulation (and exhibits thereto), and (3) file a Form 8-K with the U.S. Securities and Exchange Commission. (Dkt. No. 77 at 14-15, 17.) Ginkgo disseminated Notice in accordance with the Preliminary Approval Order, and no objections were received. (Pls.' Mot. at 23 (citing Joint Decl. ¶ 120); Pls.' Notice of Non-Objection, Dkt. No. 82 at 1 (explaining notice procedures and representing that no objections were made as of the December 10, 2025).)

Ginkgo has tens of thousands of shareholders, hundreds of sophisticated institutional holders, and more than 50 million shares outstanding. (Joint Decl. ¶ 121.) Ginkgo's institutional holders, which have the highest incentive and ability to object where they deem fit, include BlackRock, Inc. and the Vanguard Group, Inc. which collectively own more than 11% of Ginkgo common stock, or more than 5 million shares. (*Id.*; Pls.' Mot. at 23.) The lack of any shareholder objection, including from institutional holders, weighs heavily in favor of approval. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (only three of thousands of shareholders objected "raises a strong presumption that the terms of a proposed class settlement are favorable").

1    Since the parties adhered to the previously-approved notice plan, the Court finds that

2 notice was sufficiently provided to shareholders. *See Bushansky v. Armacost*, No. 12-cv-01597-

3 JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014).

### B. Approval of Settlement

With the exception of the reaction of shareholders, the Court analyzed the necessary factors and found the Settlement to be fair, adequate, and reasonable when it granted preliminary approval. (Dkt. No. 77 at 9-12.)

The Court finds no reason to alter this conclusion now that shareholders have been given notice and an opportunity to be heard. No shareholder objected to the Settlement. (Pls.' Notice of Non-Objection at 1.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper). Courts reviewing settlements of shareholder derivative suits have applied the same presumption. *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 518 (N.D. Cal. 2020), *aff'd,* 845 F. App'x 563 (9th Cir. 2021) (citation omitted). That presumption is given even more weight where "not one sophisticated institutional investor objected to the Proposed Settlement." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F.Supp.3d 394, 410 (S.D.N.Y. 2018); *see also In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004).

After reviewing the required factors, the Court continues to find the Settlement to be fair, reasonable, and adequate, such that final approval is warranted.

//

### C. Attorneys' Fees and Costs

"Under both Delaware and federal law, a court may grant fees and expenses to derivative counsel when the derivative suit creates a common fund or confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994); *see also Mills v. Elec.*

6

1  *Auto-Lite Co.*, 396 U.S. 375, 396, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Lewis v. Anderson*, 692
2  F.2d 1267, 1270 (9th Cir. 1982). "[W]here the litigation results in a 'common fund' that benefits
3  the general class of shareholders, courts may allocate a percentage of the total fund as the fee
4  award," *In re Oracle Sec. Litig.*, 852 F. Supp. at 1449, "in lieu of the often more time-consuming
5  task of calculating the lodestar," *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942
6  (9th Cir. 2011).

7  The Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class
8  action [at] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns
9  Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). It has applied the same standard in derivative
10 settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379. Under this approach, courts generally
11 start with the 25 percent benchmark and adjust upward or downward depending on:

> [T]he extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash ... fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

16 *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino
17 v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)).

18 Here, the Settling Parties agreed that Ginkgo would pay Plaintiffs' Counsel attorneys' fees
19 and costs in the amount of $2,750,000, which exceeds the benchmark award of 25%. (Pls.' Mot. at
20 17.) The fee negotiations were based on the value of the Settlement to Ginkgo at an estimated $7-
21 8 million, the quality of Plaintiffs' Counsel's advocacy, role, and the risks assumed in securing the
22 benefits of the settlement, and the range of fee and expense amounts approved in similar derivative
23 actions. (Pls.' Mot. at 17 (citing Joint Decl. ¶ 102); Joint Decl. ¶ 105.) More importantly, the fee
24 negotiations occurred only after the parties reached an agreement on the substantive terms of the
25 Settlement. (Joint Decl. ¶ 101.) The fact that the fees were negotiated after the parties agreed to
26 the material terms, weighs in favor of the reasonableness of the fees and warrants deference to the
27 parties' agreement. *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
28 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008).

Moreover, the Court recognizes that courts routinely deviate from the 25% benchmark when counsel secures both monetary and non-monetary (e.g. corporate governance) recoveries. *See, e.g., In re Atmel Corp. Derivative Litig.,* No. C 06-4592 JF (HRL), 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010) (approving 51% of monetary component and overruling an objection that the requested fee was unreasonable because it exceeded the Ninth Circuit's 25% benchmark, finding it "reasonable in light of the overall benefit of the Settlement to Atmel and its shareholders"); *In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008 WL 4820784, at *4-5 (N.D. Cal. Nov. 5, 2008) (approving 61% of monetary component where settlement included money and corporate governance reforms).

Finally, as with the Settlement itself, "the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' weighs in favor of approval of the fee request." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 532–33 (N.D. Cal. 2020), *aff'd,* 845 F. App'x 563 (9th Cir. 2021) (quoting *In re Bisys Sec. Litig.*, No. 04 CIV. 3840(JSR), 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007)).

Based on the relevant legal authority, and for the reasons set forth above, the Court finds that the corporate governance reforms confer substantial financial benefit to Ginkgo, such that a deviation from the 25% benchmark is appropriate. Thus, the Court awards Plaintiffs' Counsel attorneys' fees and costs in the amount of $2,750,000.

### D. Plaintiffs' Request for Service Awards

Finally, Plaintiffs moves for an incentive award in the amount of $8,000— to be split evenly between Dr. Hu and Mssrs. Bowers, Newman, and Moskowitz—and paid out of Plaintiffs' Counsel's attorney's fee award. (Pls.' Mot. at 25.)  The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Derivative plaintiffs may likewise merit compensation "for work done on behalf of the [shareholders]." *Id.*; *see also In re Galena Biopharma*, 2016 WL 3457165, at *12 (approving incentive award to derivative action lead plaintiffs).  In this district, the presumptively reasonable amount for service awards is $5,000. *Harris v. Vector Mktg. Corp.*, No. C-08-5198

1  EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

2  Thus, the Court finds the $2,000 Service Awards to be presumptively reasonable, and
3  awards $2,000 each to Dr. Hu and Mssrs. Bowers, Newman, and Moskowitz, which shall be paid
4  from Plaintiffs' Counsel's fee award.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for final approval of the derivative settlement is GRANTED, and, as set forth in the Stipulation of Settlement, the Court awards $2,750,000.00 in attorneys' fees and costs to Plaintiffs' Counsel, and it approves $8,000 in service awards—to be split evenly between Dr. Hu and Mssrs. Bowers, Newman, and Moskowitz—to be paid out of Plaintiffs' Counsel's fee award.

Additionally, the Court retains jurisdiction over this action for the purposes of supervising (i) the implementation of the Settlement; and (ii) the Settling Parties for the purpose of construing, enforcing, and administering the Stipulation and the Settlement, including, if necessary, setting aside and vacating this Judgment, on motion of a party, to the extent consistent with and in accordance with the Stipulation if the Effective Date fails to occur in accordance with the Stipulation.

The Clerk shall close the case, and the Court will enter separate judgment.

IT IS SO ORDERED.

Dated: December 19, 2025

KANDIS A. WESTMORE
United States Magistrate Judge